UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BENJAMIN L. HENDRICKS, *et al.*, | ) | CASE NO. 1:08 CV 1216 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CUYAHOGA COUNTY | ) | AND ORDER |
| JUSTICE CENTER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

On May 16, 2008, *pro se* plaintiffs Benjamin L. Hendricks, David Carter, and Donald Williams filed this civil rights action against the Cuyahoga County Justice Center, the Cuyahoga County Justice Center Medical Department, Dr. Tuffour, Dr. Robinson, Dr. Tinman, Josie Spisak, Pat Rizika, Cuyahoga County Court of Common Pleas Judge Eileen Gallagher, Kenneth Kochevar, Michael Schefar, Kevin McDonough, Cuyahoga County Sheriff Gerald T. McFaul, Dr. Abafhidze, Nurse Besses and Corrections Officer Caddell.  In the complaint, plaintiffs each assert that they have not received appropriate medical care, and have been denied access to a law library.  They seek monetary damages, a change in jail policy, access to the law library, and structural modifications to the jail.

Mr. Hendricks filed three subsequent Motions to Amend the Complaint.  Although

Mr. Hendricks characterizes these pleadings as "Amended Complaints," it is apparent that he intends for them to supplement the original pleading and not to take the place of the original complaint.  The first Motion, filed by Mr. Hendricks on July 2, 2008, seeks to add the Public Defenders Office, Public Defender Chris Roberson, the Probation Department, Probation Officer Cheryl Parker, the Cuyahoga County Prosecutor's Office, Cuyahoga County Prosecutor William Mason, and Assistant Cuyahoga County Prosecutor Kevin Fillatrant.  Mr. Hendricks claims that Mr. Roberson is not properly preparing a defense in his criminal action, that Ms. Parker "has performed duties outside of her jurisdiction such as changing and extending a person's community control sanctions without due process," and that the prosecutor's office failed to provide him with a speedy trial.  The second Motion, filed by Mr. Hendricks on July 16, 2008, seeks to have plaintiff David Carter removed from the case, and claims that plaintiff Donald Williams was mistreated by a correction officer.  The third Motion was filed on August 20, 2008 by Mr. Hendricks, and asserts claims which pertain to an inmate who is not a party to this action.

## Background

The plaintiffs were all incarcerated in the Cuyahoga County Jail at the time they filed this action.  Mr. Hendricks informed the Court that Mr. Carter has been transferred from the jail since that time.  While most of the plaintiffs' claims concern medical issues, the allegations supporting those claims are all factually distinct and specific to each plaintiff.  The Court therefore will address each of them in turn.

## Benjamin Hendricks

Mr. Hendricks was sentenced to one year probation in November 2006 after pleading

guilty to two counts of pandering sexually oriented matter involving a minor.[1]  The term of his probation was extended one year by the court on October 22, 2007.  Mr. Hendricks states that he was arrested on a probation violation on December 5, 2007.  He was indicted on February 21, 2008 on ten counts of pandering sexually oriented matter involving a child and has been held in the Cuyahoga County Jail since that date awaiting the conclusion of the criminal proceedings.[2]

Mr. Hendricks states that he has Crohns Disease.  He asserts that the defendants should be aware of his medical condition from his previous incarceration in the jail in 2006.  He contends that he requires a special diet but has been told that the jail cannot accommodate his dietary requests.  He alleges that his pain medication is inadequate to provide relief.  He indicates that his private physician recommended Vicodin for pain management; however, jail physicians will not prescribe this medication.  He was given Demerol on one occasion and thereafter he was given Ultram.[3]  He complains that the Ultram is ineffective.

Mr. Hendricks was sent to the hospital on February 5, 2008 complaining of pain.  He alleges he was given a prescription for Codeine which he claims he was told to take every three to six hours as needed for pain management.  He states that the jail physician, Dr. Tuffour, dispensed the medication only three times per day.  The physician also discontinued his Ultram prescription while Mr. Hendricks was taking the Codeine.  Mr. Hendricks contends that he once

---

[1]  *See State of Ohio v. Hendricks*, Case No. CR-06-480856 (Cuyahoga Cty Ct. Com. Pl. indictment filed May 18, 2006).  Cuyahoga County Court of Common Pleas dockets can be viewed at: http://cpdocket.cp.cuyahogacounty.us/

[2]  *See State of Ohio v. Hendricks*, Case No. CR-08-507237 (Cuyahoga Cty Ct. Com. Pl. indictment filed Feb. 21, 2008).  Mr. Hendricks recently pled guilty to five of the ten counts and is awaiting sentencing on September 17, 2008.

[3]  Ultram is the brand name of the drug Tramadol, a narcotic used to treat chronic pain.  *See* http://www.drugs.com/ultram.html.

again began to experience pain.  He then began to experience an itching sensation which was determined to be an allergic reaction to the Codeine.  Mr. Hendricks alleges it took 30 minutes for a physician to arrive to speak to him about his ailment.  He claims that when Dr. Tinman arrived, he prescribed Benedryl and discontinued the Codeine.  He was referred back to Dr. Tuffour for all other treatments and medication prescriptions.

Mr. Hendricks claims that when he was placed on new pain medication, his injections were not administered on a timely basis.  He contends that he is supposed to receive the medication at 9:00 a.m., 1:00 p.m., 5:00 p.m., and 9:00 p.m.  He claims that when the medication does not arrive on time, he instructs a corrections officer to call the medical department.  He contends that there is often a delay of several hours between the call and the administration of the medication.  Mr. Hendricks sent several kites to the medical department inquiring about the reasons for the delay.[4]  In response, he was informed that his medication was prescribed not on a scheduled basis, but on an "as needed" basis, not to exceed four times per day.  He was told that because Ultram can be addictive, if the correct amount of time between doses has not expired, the medication cannot be given.  The medical department noted that in the four days before he had

---

[4]     In a kite sent to medical department on March 2, 2008, Mr. Hendricks states, "at 5:30 a.m., I asked CO Williams to call medical for pain meds.  He said they would let nurse know.  At about 6:30 a.m. nurse came in pod to give someone else meds but said I had to wait.  At 10 a.m. asked Scott on am med cart he said he was unaware of the problem that as soon as he got back to medical he would send for me.  At 10:30 a.m. finally got shot.  Why did it take 5 hours when I'm right down the hall?  I think maybe they ought to wait 5 hours in severe pain and see if they like it!!  Does Judge Gallagher have to call again?"  (Mot. for Prelim. Injunction Ex.U).  Two days later, he sent another kite to the medical department which stated, "PAIN medication due at 9 a.m., 1 p.m., 5 p.m., 9 p.m.  At least according to the book (but we all know how that works).  Anyway, again I asked CO Parks to call medical at 6:30 about 5 pm meds.  They of course refused to bring them to me (again). ...Finally showed at 7:45.  Almost 3 hours?!  Real nice! Here we go again!  Guess I'll just have my judge call the warden again."  (Mot. for Prelim. Injunction Ex.V).

-4-

written the communication, he had received fifteen doses.

Mr. Hendricks also states that he has been experiencing difficulties associated with his shoulder, which has a prosthetic device due to a pre-existing injury.  He claims he dislocated his shoulder on April 4, 2008.  He was taken to St. Vincent Hospital but they would not treat him due to his prosthesis and he was returned to the jail.  Three days later, he was taken to the emergency room at Metro Health Medical Center.  An orthopedic surgeon put his shoulder in a brace and indicated that Mr. Hendricks would require surgery to repair the injury.  Mr. Hendricks alleges that he is unable to change his ostomy bag or shower with only one arm.  The staff at the jail have refused to assist him with bathing.  He contends that the medical staff does not respond promptly when he calls for his ostomy bag to be changed.[5]  He alleges that on several occasions, he was forced to take his arm out of the brace to perform these tasks, which resulted in the dislocation of his shoulder.  After each incident, he was taken to the emergency room to have it set back in place.  Mr. Hendricks claims he is also experiencing muscle spasms in his shoulder for which the emergency room physicians have prescribed medication.  He states that Dr. Abafhidze refused to provide the recommended medication.

In addition to medical claims, the plaintiffs allege that the Cuyahoga County jail has no law library.  They claim that although most inmates are represented by counsel, they may have

---

[5]     In a kite sent to the medical department on May 20, 2008 he states, "Can someone please explain the 3-5 hour waits?  From my point of view you must be either understaffed, incompetent, inept, lazy or don't care?  My ostomy bag takes maybe 5 minutes to do and I'm only 30 yards down the hall.  What is the problem?"  (Mot. for Prelim. Injunction Ex. B-2).  He was asked by the medical department supervisor to provide a name and a specific incident.  He responded with, "OK fine. [I]t was the 19th of May at 5:28 a.m.  CO Williams picked up the phone and dialed 6188 by the time they finally got around to doing anything it was almost 10 a.m.  Now can you explain this problem?  Is it 1 hour wait for every minute of work required or is it 1 hour wait for every 10 yards down the hall?"   (Mot. for Prelim. Injunction Ex. B-7).

questions which require research.  They contend that jail inmates do not have adequate access to the courts.

In his various proposed supplemental pleadings, Mr. Hendricks seeks to add several new causes of action.  He claims the Public Defenders Office and Public Defender Chris Roberson are not properly defending him in his criminal action.  He claims the Probation Department and Probation Officer Cheryl Parker improperly obtained an extension of his probation from the court. He contends that the Cuyahoga County Prosecutor's Office, Cuyahoga County Prosecutor William Mason, and Assistant Cuyahoga County Prosecutor Kevin Fillatrant failed to provide him with a speedy trial.  Mr. Hendricks claims that plaintiff Donald Williams was mistreated by a corrections officer, and requests that plaintiff David Carter be removed from the case.  Finally, Mr. Hendricks, claims that an inmate who is not a party to this action was assaulted by a corrections officer.

### David Carter

Mr. Carter was arrested on March 29, 2008 on charges of escape.  At the time of his arrest, he was taking the prescription drug Dilantin.  Mr. Carter reported his dosage to the intake officer; however, he claims that when he began receiving his medication, he noticed that the dosage had been altered.  Two weeks later, Mr. Carter lost consciousness and fell, sustaining a large gash on his head which required stitches to close.  He was taken by ambulance to a nearby hospital for treatment.  When he returned to the jail, he continued to report to the medical department that he was feeling ill.  He was eventually hospitalized.  During his hospitalization, a blood test revealed high levels of Dilantin, which can cause a drop in blood pressure.  When he was returned to the jail, the dosage of his medication was adjusted.

### Donald Williams

Mr. Williams claims that he has asthma and has breathing difficulty due to strokes he has had in the past.  He indicates that the medical department is aware of the situation.  On May 7, 2008, Mr. Williams exhausted his supply of inhaler.  He states, "their excuse is that 'sorry we forgot' or 'we have nobody to go get it.'  Both are unacceptable to this plaintiff."  (Compl. at 8.)

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[6]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, it is apparent that Mr. Hendricks is asserting claims on behalf of other inmates.  A party may plead and conduct his or her case in person or through a licensed attorney.  *See* 28 U.S.C. § 1654; *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d

---

[6]     An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

Cir. 1991).[7]  There is no indication that Mr. Hendricks is an attorney licensed to practice law in the State of Ohio and in the United States District Court for the Northern District of Ohio.  He may not assert claims on behalf of other inmates and may not sign pleadings on their behalf.  Each litigant must personally sign the pleading to invoke this Court's jurisdiction.  Moreover, once a litigant has signed the pleading, Mr. Hendricks cannot unilaterally remove him from the case.  As all of the Motions to Amend Complaint were signed by Mr. Hendricks alone, the Court will consider the claims they contain as asserted only by Mr. Hendricks.

The plaintiffs' complaints consist largely of narrative.  They do not specify the legal claims they wish to assert.  Because most of the allegations concern medical issues, it is possible that the plaintiffs are attempting to assert claims for deliberate indifference to serious medical needs.  These claims generally arise under the Eighth Amendment, which applies specifically to post-conviction inmates.  *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir.1992).  The Due Process Clause of the Fourteenth Amendment, however, operates to guarantee those same protections to pretrial detainees.  *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir.1994); *see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988)(stating that alleged violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard).  Because the Constitution does not directly provide for damages, plaintiffs must assert their claims under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations.  *Sanders v. Prentice-Hall Corp. Sys*, 178

---

[7]     28 U.S.C. § 1654 provides:

   In all courts of the United States the parties may plead and conduct their own cases
   personally or by counsel as by the rules of such courts, respectively, are permitted
   to manage and conduct cases therein.

F.3d 1296 (6th Cir. 1999).  As no other statutory provision appears to present an even arguably viable vehicle for the assertion of plaintiff's claims, the Court construes these claims as arising under 42 U.S.C. § 1983.

To establish a prima facie case under 42 U.S.C. § 1983, the plaintiffs must assert that a person acting under color of state law deprived each of them of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Plaintiffs, however, cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  There are no allegations in the pleadings which reasonably associate Judge Gallagher, Mr. Kochevar, Mr. Schefar, Mr. McDonough, or Mr. McFaul with any of the claims asserted by the plaintiffs.  These defendants are dismissed from this action.

Furthermore, the Cuyahoga County Justice Center and the Cuyahoga County Justice Center Medical Department are not *sui juris* and therefore cannot sue or be sued.  *See Nieves v. City of Cleveland*, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); *Jones v. Ptl. D. Marcum*, No. C-3-00-335, 2002 WL 786572 (S.D. Ohio Mar. 11, 2002); *Williams v. Dayton Police Dept.*, 680 F. Supp. 1075 (S.D. Ohio 1987); *see also Messer v. Rohrer*, No. C-3-95-270, 1997 WL 1764771, n. 9 (S.D. Ohio Mar. 31, 1997).  They are merely sub-units of the municipalities they serve.  *Nieves*, 153 Fed. Appx. 349, 2005 WL 2033328 at *1.  The Court therefore liberally construes these claims as asserted against Cuyahoga County.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury

-9-

inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999).  The complaint contains no suggestion of a custom or policy of Cuyahoga County which may have resulted in the deprivation of a federally protected right of the plaintiff.

        Similarly, it also possible that Sheriff McFaul is named as a defendant because he is ultimately responsible for jail operations.  Respondeat superior is not a proper basis for supervisor liability under § 1983. *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir.2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845 (1984).  Liability cannot be based solely on the right to control employees, *Bellamy,* 729 F.2d at 421, or "simple awareness of employees' misconduct," *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421. "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874).  There are no allegations in the complaint which suggest that Sheriff McFaul was personally involved in any

-10-

of the activities which formed the basis of the complaints.

Furthermore, many of the allegations in the pleadings are stated as a general narrative and do not indicate which defendant, if any, is responsible for the action.  Neither Mr. Carter nor Mr. Williams include allegations against a specific defendant.  Mr. Carter claims that he was receiving an incorrect dose of Dilantin which resulted in his loss of consciousness and hospitalization.  He does not indicate which individuals were responsible for making this decision.  Mr. Williams alleges that he exhausted his supply of inhaler.  He does not state which individual he believes is responsible for this situation.  Mr. Hendricks also includes many claims which are not directed at any particular defendant.  He claims that his dietary needs have not being met, and his requests for pain medication and assistance with his ostomy bag have not received prompt responses.  He too fails to allege which of the defendants is responsible for these actions.  Absent allegations of this nature, these plaintiffs cannot hold any defendant personally liable for those allegations.  *Rizzo*, 423 U.S. at 371.

To the extent that one of the claims can be associated with a specific defendant, the plaintiffs fail to set forth a claim for deliberate indifference to serious medical needs.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  *Id.*

-11-

Inmates "cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999).  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  *Id.*  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

While deliberate indifference to serious medical needs of prisoners is a violation of the Eighth Amendment,  mere negligence in diagnosing or treating a medical condition does not state a constitutional claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*  Furthermore, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

There is nothing in the complaint to suggest that any of the defendants was deliberately indifferent to the serious medical needs of the plaintiffs.  Mr. Williams alleges that he exhausted his supply of inhaler because the medical department forgot to replenish it.  Mr. Carter alleges that he was receiving the incorrect dose of Dilantin which caused him to lose consciousness. These allegations, at best, describe negligent behavior.  Mere negligence will not suffice to state a claim for relief under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

-12-

Furthermore, it is apparent that Mr. Hendricks disagrees with many of the decisions that have been made for his medical care.  He objects to substitution of one medication for one which was prescribed by his private physician.  He challenges the response times to his demands for medication and assistance.  Mr. Hendricks is receiving medical care.  The allegations challenge the adequacy of his treatment.  Allegations sounding in state tort law do not rise to the level of an Eighth Amendment violation.

In addition to these medical claims, plaintiffs allege that the jail has no law library.  They declares that this is a violation of his First Amendment right of access to the courts.  To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The injury requirement is not satisfied by just any type of frustrated legal claim.  *Id*.  A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions.  *Id.*; *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).  "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[8] *Id.* at 355.  The plaintiffs do not allege that any of them has suffered a specific injury as a result of the jail's policy.  General allegations that an inmate may be damaged by the lack of a law library do not state a claim for relief under the First Amendment.

Mr. Hendricks further asserts that he has been denied a speedy trial and challenges

---

[8]    The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Lewis*, 518 U.S. at 355.

the representation he has received from the public defender's office.  A prisoner may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory or monetary relief.   *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998).  Mr. Hendricks pled guilty to five of the ten counts with which he was charged.  He raises a claim which, if found to have merit, would call into question the validity of this conviction.  As such, he must also allege his conviction was declared invalid by either an Ohio state court or a federal habeas corpus decision.  He has not done so and his claim therefore must be dismissed.

Finally, Mr. Hendricks claims that the probation department improperly sought an extension to his term of supervised release.  The extension of his sentence was ordered by the Common Please Court Judge who presided over his criminal case.  To the extent that Mr. Hendricks seeks to have that decision overturned, this Court is unable to grant the relief he requests.  United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari.  *Id.*  Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal

-14-

rights.  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).  Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action.  *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

   The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding.  *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  *Catz*, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.  *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006).  Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied  in the state action.  *Id.*; *Tropf*, 289 F.3d at 937.

   In the present action, plaintiff claims the extension of his probation sentence was improper.  This allegation appears to be a specific grievance that the law was incorrectly applied to plaintiff's case.  Any review of potential constitutional claims asserted in this context would require the Court to review the specific issues addressed in the state court proceedings against him.

This Court lacks subject matter jurisdiction to conduct such a review.  *Feldman*, 460 U.S. at 483-84 n. 16; *Catz*, 142 F.3d at 293.

To the extent that Mr. Hendricks is simply seeking to have this issue revisited in this Court, it is also without merit.  A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state.  28 U.S.C. § 1738; *Dubuc v. Green Oak Township*, 312 F.3d 736, 744 (6th Cir. 2002).  The preclusive effect of the previous state court judgments are therefore governed by Ohio law on preclusion.  *Id.*  Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit.  *National Amusement, Inc. v. Springdale*, 53 Ohio St. 3d 60, 62 (1990).  The Cuyahoga County Court of Common Pleas already decided to extend the term of his probation.  This Court is bound to give full faith and credit to the decisions of that court.

### Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[9]

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 8/29/08

---

[9]  28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

-16-